IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JAMES ARTHUR STOKES III,     )
          )
     Plaintiff,     )
          )
v.         )     Case No. 2:18cv50-MHT-WC
          )
SANTANDER CONSUMER USA,     )
          )
     Defendant.     )

## **RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the Court is Plaintiff's Second Amended Complaint.[1] Doc. 12. This case has been referred to the undersigned Magistrate Judge "for all pretrial proceedings and entry of any orders or recommendations as may be appropriate." Doc. 4. Plaintiff requested and was granted leave to proceed *in forma pauperis* (Docs. 2 and 5), which obligates the court to undertake review of Plaintiff's SAC pursuant to the provisions of 28 U.S.C. § 1915(e). *See Troville v. Venz*, 303 F.3d 1256, 1260 (11th Cir. 2002) (applying § 1915(e) in non-prisoner action). That statute instructs the court to dismiss any action wherein it is determined that an *in forma pauperis* applicant's suit is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B)(i)–(iii).

---

[1] All citations or references to "Second Amended Complaint" or "Complaint" in this Recommendation will refer to Plaintiff's Second Amended Complaint (Doc. 12).

Upon review of the Second Amended Complaint, the court finds that this case is due to be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) because it is frivolous and fails to state a claim on which relief may be granted.

## I.  PLAINTIFF'S CLAIMS

Plaintiff has an outstanding loan balance with Defendant in the amount of $18,479.69. Doc. 12 ¶ 7.  He claims he sent a "money order" to Defendant to discharge his loan but that it was dishonored and never returned to him. *Id.* ¶¶ 10–12.  This lawsuit arises out of Defendant's alleged failure to discharge his debt after receipt of the "money order," its failure to respond to certain document requests by Plaintiff, and its efforts to collect the debt against him.  Plaintiff's Complaint, as amended, sets forth seven claims against Defendant:

### A.  Claim One (Violations of Public Law 73-10)

In Plaintiff's first claim, he states that he "converted" Defendant's demand for payment into a "money order" to discharge his outstanding loan balance pursuant to Public Law 73-10, Chapter 48, 48 Stat. 112.[2]  Doc. 12 ¶ 10.  He asserts that Defendant failed to adjust his account "while simultaneously demanding further payments" and then states as follows regarding the discharge of his debt:

---

[2] H.J. Res. 192, 73rd Cong. (1933), enacted by Pub.L. No. 73–10, 48 Stat. 112–13 (1933), is titled, "To assure uniform value to the coins and currencies of the United States."  It states that obligations requiring payment "in gold or a particular kind of coin or currency, or in an amount in money of the United States measured thereby" are against public policy and that U.S. currency is legal tender for all debts. *See* H.J.R. Res. 192, 73d Cong. (1933); *see also Sanford v. Robins Fed. Credit Union*, No. 12cv306, 2012 WL 5875712, at *3 (M.D. Ga. Nov. 20, 2012). This law suspended the gold standard in the United States. *Id.* (citations omitted).

> As a direct result of the banking act of 1862 through 1864, the Federal Reserve act of 1912-13, the Economic Relief Act of 1933, Statutory Federal Credit Union Reform Act of 1990, and 2 U.S.C. § 661, there is no means by which anyone may pay a purported debt obligation.   And as a result, Congress saw fit to state in the statute at large (the official source for the laws of the United States) 73.10 (of June 5 and 6 of 1933) Congress declared that "every provision contained in or made with respect to any obligation which purports to give the obligee a right to require payment in … a particular kind of coin or currency, or in an amount in money of the United States measured thereby is 'against public policy.'   Such provisions in obligations thereafter incurred are prohibited."

*Id.* ¶¶ 14–15.   Plaintiff goes on to state that Public Law 73-10 provides people a set-off from the United States Government as a means to discharge their debts. *Id.* ¶ 15.

### B.     Claim Two (Violations of TILA, the UCC Statute of Frauds, and 18 U.S.C. § 1348; Constructive Fraud)

Plaintiff signed a promissory note in favor of Defendant on August 1, 2017. *Id.* ¶17. However, he claims the promissory note was, in fact, a security instrument governed by the UCC, which makes him a party to an investment contract that was not disclosed to him. *Id.* ¶17–18.   He asserts that Defendant executed an unlawful loan modification and made Plaintiff a party to a Pooling and Servicing Agreement ("PSA") that was not "subscribed to or memorialized" by him, thus rendering the promissory note executed by Plaintiff "void and unenforceable *ab initio.*" *Id.* ¶ 19–20.   Plaintiff claims these actions violate the Truth in Lending Act ("TILA"), the UCC Statute of Frauds, and 18 U.S.C. § 1348 and that Defendant's actions constitute constructive fraud. *Id.* ¶ 21.

### C.     Claims Three through Six (Failure to Respond to Document Requests)

Claims Three through Six allege that Defendant failed to respond to certain document requests by Plaintiff.   Plaintiff alleges that he sent Defendant two written

correspondences and a notice of intent to sue. *Id.* ¶ 22.  He also made the following document requests from Defendant:

(1)   <u>Claim Three</u>: A request that Defendant show that it provided a loan to Plaintiff or "paid any consideration to support the alleged contract, or where the defendant has, in any way, incurred any financial loss or damage by the plaintiff's alleged non-payment." *Id.* ¶¶ 22–23.

(2)   <u>Claim Four</u>: A request that Defendant prove "a) its holder in due course status and b) if the defendant has followed the proper protocol in establishing a qualified trust." *Id.* ¶ 24.  This request is based on Plaintiff's contention that Defendant "performed a securitization" of the promissory note and eventually sold it on the secondary market. *Id.* ¶¶ 25–26.  Plaintiff contends that he is the true and rightful owner of the instrument so it was unlawful for Defendant to hold, negotiate, or transfer the security instrument and, as a result, "there lawfully can be no funds within the corpus of the trust; therefore, [Defendant] does not have a) a qualified trust, b) is selling unsecured certificates to investors and c) is in possession of contraband." *Id.* ¶¶ 28–30.

(3)   <u>Claim Five</u>: A request that Defendant prove its standing as a creditor in the original loan and the subsequent sale on the secondary market. *Id.* ¶ 31.  This request is based on his contention that "[a]ccounting law and principles show that it was in fact the plaintiff who funded the entire transaction" because "when a note/contract/financial asset is deposited with a bank/deposit institution it becomes a cash item to said institution, and a cash receipt to depositor (i.e., the plaintiff)." *Id.* ¶ 32.  Thus, Plaintiff claims he "donated" funds to a "constructive trust" created by the securitization of the promissory note, making

4

Plaintiff the owner of the proceeds acquired by Defendant on the secondary market. *Id.* ¶ 36.

        (4)    <u>Claim Six</u>: A request that Defendant prove it "indeed paid the required taxes stipulated by the Internal Revenue Code." *Id.* ¶ 38.  This request is based on Plaintiff's claim that Defendant failed to pay the required taxes, which means "no lien can attach," the contract in question is unenforceable, and Defendant unlawfully billed Plaintiff for taxes Defendant owed. *Id.* ¶¶ 40–43.

Plaintiff does not cite a statute or law requiring Defendant to provide him with the documents he describes in the above requests.  He merely complains that Defendant ignored or unsatisfactorily responded to his requests.

### D.    Claim Seven (FCRA Violation and Public Slander)

Claim Seven relates to Defendant's attempts to collect payment on Plaintiff's account.  Plaintiff alleges Defendant negatively reported his outstanding loan to credit reporting agencies without first validating the debt and that this conduct violates the Fair Credit Reporting Act ("FCRA") and constitutes "public slander." *Id.* ¶ 44.

## II.    STANDARD OF REVIEW

When determining whether to dismiss an action, "the Court accepts the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff."  *Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).  In order to state a claim upon which relief could be granted, a complaint must satisfy the pleading standard of Rule 8 of the Federal Rules of Civil Procedure, which requires that a plaintiff submit a "short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

A pleading is insufficient if it offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Twombly*, 550 U.S. at 555. *See also Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (a complaint does not suffice under Rule 8(a) "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"). Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief which is plausible on its face.'" *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "A claim is factually plausible where the facts alleged permit the court to reasonably infer that the defendant's alleged misconduct was unlawful. Factual allegations that are 'merely consistent with' a defendant's liability, however, are not facially plausible." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. If there are "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that supports the claims alleged in the complaint, then the claim is "plausible" and the motion to dismiss should be denied and discovery in support of the claims should commence. *Twombly*, 550 U.S. at 556. But,

"Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79. Ultimately, in assessing the plausibility of a plaintiff's claims, the court is to avoid conflating the sufficiency analysis with a premature assessment of a plaintiff's likelihood of success because a well-pleaded claim shall proceed "even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

Although courts liberally construe pro se complaints, a court cannot rewrite a complaint to include the facts that are not alleged and claims that are not articulated. *Sanford v. Robins Fed. Credit Union*, No. 5:12-CV-306 MTT, 2012 WL 5875712, at *2 (M.D. Ga. Nov. 20, 2012) (citing *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir. 2006)). A pro se plaintiff is still required to include allegations for each material element of his claims, and bare legal conclusions are insufficient. *Sanford*, 2012 WL 5875712, at *2 (citing *Davilla v. Delta Air Lines,* 326 F.3d 1183, 1185 (11th Cir. 2003); *McNeil v. United States,* 508 U.S. 106, 113 (1993) (stating that "procedural rules in ordinary civil litigation" should not be interpreted "so as to excuse mistakes by those who proceed without counsel")).

## III.   DISCUSSION

### A.   Claim One (Violations of Public Law 73-10)

Plaintiff's claim that Public Law 73-10 allows him to satisfy his debt to Defendant by "converting" a demand for payment into a "money order" and presenting it to Defendant is due to be dismissed. As explained above, the purpose of Public Law 73-10 was to

"assure uniform value to the coins and currencies" and suspend the gold standard in the United States. *See* Pub.L. No. 73–10, 48 Stat. 112–13 (1933).   No facts asserted in Plaintiff's Complaint are relevant to Public Law 73-10, as no provision in that law (1) allows Plaintiff to "convert" a payment demand into a money order to satisfy a loan, (2) provides a set-off from the U.S. Government as a means to discharge debts; or (3) voids or nullifies promissory notes.

In *Sanford v. Robins Federal Credit Union*, *supra*, the plaintiff advanced a similar theory for discharging debts with two "electronic funds transfer instruments."   *Sanford*, 2012 WL 5875712, at *1.   He claimed the defendant accepted the instruments by "operation of law" but did not release titles to the vehicles serving as security for the debts. *Id.*   He then sued the defendant under various statutes, including Public Law 73-10. *Id.*   In finding that the plaintiff failed to state a claim upon which relief can be granted, the *Sanford* court stated:

> Additionally, the Plaintiff's reference to H.J. Res. 192, 73rd Cong. (1933), enacted by Pub.L. No. 73–10, 48 Stat. 112–13 (1933), is also insufficient to state a claim upon which relief can be granted…. The Plaintiff declares that presentment of the electronic funds transfer instruments "discharged [his] debt upon receipt of the instrument" and that his "[p]ayment was in full accord with" the resolution and public law.  He adds that, as a result of this law, "there exists an obligation of the Federal Government (Treasury) to discharge debts, in exchange for giving them credit to create and control the money system." The Plaintiff later explains that "[t]he discharge part of the system was established because of the bankruptcy of the united [sic] States of America in 1933."

> Frankly, it is not clear to this Court how the Plaintiff finds support for his claims in the United States' suspension of the gold standard. His argument in this regard is vague and, at times, less than coherent. To some extent, it appears the Plaintiff hopes to advance a watered-down version of claims other plaintiffs have unsuccessfully attempted via Public Law 73-10, such as

the "vapor money" theory, "unlawful money" theory, or "redemption" theory. *See McLaughlin v. CitiMortgage, Inc.,* 726 F. Supp. 2d 201 (D. Conn. 2010) (discussing these theories in depth and collecting cases that "universally and emphatically" reject them). Such claims are "equal parts revisionist legal history and conspiracy theory," *Bryant [v. Washington Mut. Bank,* 524 F. Supp. 2d 753, 758 (W.D. Va. 2007)], and share a common thread in their use by plaintiffs seeking to avoid debt repayment. These theories appear to all somehow rely on various supposed consequences flowing from the 1933 suspension of the gold standard.

For example, one tenant of "redemption" theory suggests that the United States has been bankrupt since suspending the gold standard in 1933, and that, as a result, the dollar is nonredeemable. Citizens thus became creditors for a bankrupt system, and the Federal Reserve Note became a debt note with no intrinsic value—or so the story goes. *McLaughlin,* 726 F. Supp. 2d at 211. Another variation suggests that when an individual executes a promissory note in favor of a bank, he has actually provided the bank "money." The bank then deposits this "money" into its own account, lists it as an asset on its ledger, and lends it back to individual. Through bookkeeping procedures, the bank has supposedly created money even though it does not actually have gold-backed funds available to lend, and the note is thus void from the outset. *See, e.g., Rudd v. KeyBank, N.A.,* 2006 WL 212096 (S.D. Ohio).

…. Courts have widely rejected arguments seeking relief pursuant to theories based on Public Law 73–10. *See McLaughlin,* 726 F. Supp. 2d at 214 (collecting cases)….

*Sanford*, 2012 WL 5875712, at *3–4 (internal court document citations omitted). *See also*

*Wilkerson v. Gozdan*, No. 14cv693-WKW, 2014 WL 4093279, at *5 (M.D. Ala. Aug. 19,

2014) (dismissing similar claim based on Public Law 73-10 where plaintiff purportedly

satisfied a loan with a credit slip and promissory note).

In *Williams v. Skelly*, No. 17cv204, 2018 WL 2337310 (W.D. Ken. May 23, 2018),

the court addressed this issue in the context of student loans. To satisfy a student loan with

the U.S. Department of Education, the plaintiff sent a "contract/bond" (on which he was

both the secured party and debtor) to the defendant. After it was dishonored, he filed a

lawsuit arguing the debt should have been discharged under Public Law 73-10 and other statutes.  In dismissing the plaintiff's claim, the *Williams* court determined that the plaintiff appeared to be asserting a form of "sovereign citizen" claim against the defendant, noting that "adherents of such claims or defenses believe that they are not subject to government authority and employ various tactics in an attempt to, among other things, avoid paying taxes, extinguish debts, and derail criminal proceedings." *Id.* at *2 (citations omitted).  The court went on to state that complaints based on sovereign citizen theories may be dismissed "without extended argument." *Id.* (citations and omitted).

Although Plaintiff in this case does not specifically identify himself as a "sovereign citizen," he refers to himself as "a natural man and sentient being" (Doc. 12 ¶5) and is clearly advancing a sovereign citizen theory. *See Young v. PNC Bank, N.A.*, No. 16cv298, 2018 WL 1251920, at n.1 (N.D. Fla. Mar. 12, 2018) (noting that plaintiff did not identify himself as a sovereign citizen but his attempt to extinguish a lawful and legitimate debt under a bizarre legal theory bore the hallmarks of a sovereign citizen theory).  Courts have consistently rejected the "outlandish legal theories" of sovereign citizens claims. *Id.*; *United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (recognizing that courts routinely reject sovereign citizen legal theories as "frivolous"); *United States v. Benabe*, 654 F.3d 753, 761–67 (7th Cir. 2011) (discussing sovereign citizen arguments as having no validity in country's legal system and recommending that they be "rejected summarily, however they are presented"); *Lawrence v. Holt*, No. 18cv639, 2019 WL 1999783, at *2 (N.D. Ala. Apr. 12, 2019), *report and recommendation adopted,* No. 18cv639, 2019 WL 1989607 n.1 (N.D. Ala. May 6, 2019) (noting the Eleventh Circuit has repeatedly rejected

sovereign citizen legal theories as frivolous); *Roach v. Arrisi*, 2016 WL 8943290, at *2 (M.D. Fla. 2016) (recognizing that sovereign citizen theories have been consistently rejected by courts and describing them as "utterly frivolous," "patently ludicrous," and a waste of the court's time "being paid for by hard-earned tax dollars") (citation omitted).

As far as the undersigned can determine, Claim One in Plaintiff's Complaint is a frivolous sovereign citizen claim.  It is based on a theory that Plaintiff has the ability to convert a payment demand into a money order and magically extinguish his debt.  The undersigned recommends that Claim One be dismissed because it is frivolous and fails to state a clam upon which relief may be granted.[3]

### B.     Claim Two (TILA, UCC Statute of Frauds, and 18 U.S.C. § 1348 Violations)

Claim Two is based on Plaintiff's allegations that (1) executing a promissory note made him a party to an investment contract that was not disclosed to him and (2) Defendant executed an unlawful loan modification and made Plaintiff an undisclosed party to a PSA that was not "subscribed or memorialized by him." Doc. 12 ¶¶ 17–19.  He claims this conduct violates TILA, the UCC Statute of Frauds, and 18 U.S.C. § 1348,[4] making the promissory note he signed "unenforceable *ab initio*."  *Id.* at ¶¶ 20–21.

---

[3] As explained below, Claims Three through Seven appear to be based on the theory advanced in Claim One of Plaintiff's Complaint or theories similar to the cases cited above regarding sovereign citizen claims. As a result, the undersigned recommends dismissal of those claims as frivolous sovereign citizen claims as well.  However, because Plaintiff contends that other laws have been violated by Defendant's conduct, the undersigned will address each claim below.

[4] Plaintiff also alleges that Defendant's actions constitute constructive fraud. Doc. 12 ¶ 21. There is no federal constructive fraud statute, so this claim could only survive as a cause of action under state law.  This state law claim and the claim of slander (raised in Claim Seven) are addressed in Section III.E., *infra*.

Plaintiff has failed to allege facts supporting a claim that Defendant violated TILA. He makes the conclusory statement that the promissory note he signed was somehow converted into undisclosed "investment contracts," and he fails to plead facts showing that the pooling of his loan was required to be "subscribed or memorialized" by him or voided the original promissory note. Further, he fails to cite a single provision of TILA that prohibits Defendant's alleged conduct. Thus, Plaintiff's statements are mere "labels and conclusions," *Twombly*, 550 U.S. at 555, and they are not factually plausible because they do not permit a court to reasonably infer that Defendant's alleged misconduct was unlawful. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

This claim also fails under the two other theories asserted by Plaintiff. First, with respect to the UCC Statute of Frauds claim, "[t]he UCC, itself, is not the law of any state, nor is it federal law. In order to support a cause of action, a plaintiff must rely on a state's codification of the UCC." *Gilbert v. Monaco Coach Corp.*, 352 F. Supp. 2d 1323, 1329 (N.D. Ga. 2004); *see also Garren v. Palmer*, No. 10cv3705, 2010 WL 11647055, at *2 (N.D. Ga. Dec. 14, 2010), *report and recommendation adopted,* No. 10cv3705, 2011 WL 13318827 (N.D. Ga. Jan. 19, 2011) (noting that the UCC has not been adopted as federal law and does not create a federal cause of action); *Ojemeni v. Sanchez*, No. 10cv4100, 2010 WL 5684400, at *3 (N.D. Ga. Dec. 20, 2010), *report and recommendation adopted,* No. 10cv4100, 2011 WL 345832 (N.D. Ga. Feb. 1, 2011) (recognizing in context of federal question jurisdiction that the U.C.C. is not a federal statute); and *Taylor v. Wachovia Mortg. Corp.,* No. 1:07–cv–2671–TWT, 2009 WL 249353, *8 (N.D. Ga. Jan. 30, 2009)

(same).  Plaintiff has failed to rely on a state's codification of the UCC in this case, so any claim based on the UCC Statute of Frauds is due to be dismissed.

Likewise, Plaintiff has no cause of action under 18 U.S.C. § 1348.  That statute is a criminal statute with no private cause of action. *Smith v. Critelli's Auto Mart, LLC*, No. 15cv527, 2015 WL 13792265, at *5 (M.D. Fla. May 5, 2015)  (finding no private right of action under § 1348) (citations omitted).  Therefore, Plaintiff has no cause of action against Defendant under 18 U.S.C. § 1348.

Because Plaintiff has alleged no facts showing that Defendant violated a provision of TILA and cannot maintain a cause of action under the UCC Statute of Frauds or 18 U.S.C. § 1348, Claim Two in Plaintiff's Complaint is due to be dismissed because it is frivolous and fails to state a claim upon which relief may be granted.

### C.    Claims Three through Six (Failure to Respond to Document Requests)

As mentioned above, Claims Three through Six are based on Defendant's failure to produce certain documents to Plaintiff.  However, Plaintiff has identified no statute or regulation requiring Defendant to respond to his particular requests, no right that was allegedly violated by a failure to respond, and no cause of action arising out of Defendant's failure to respond.  He simply complains that Defendant ignored or unsatisfactorily responded to his requests.  Plaintiff may have intended to bring these claims under TILA since Claim Two was based partly on TILA, but, again, Plaintiff has cited no TILA regulation that requires Defendant to furnish the requested information.  This court cannot "rewrite [his] complaint to include the facts that are not alleged and claims that are not articulated," and these claims warrant dismissal. *Sanford v. Robins Fed. Credit Union*, No.

5:12-CV-306 MTT, 2012 WL 5875712, at *2 (M.D. Ga. Nov. 20, 2012) (citing *Snow v. DirecTV, Inc.,* 450 F.3d 1314, 1320 (11th Cir. 2006)).

Moreover, these claims appear to be based on some type of sovereign citizen theory, as Plaintiff's document requests suggest that somehow his debt has been extinguished or his promissory note is unenforceable.  For example, he demands that Defendant prove that it actually provided a loan or paid consideration to support the contract.  He further claims he is the true owner of the promissory note; he "funded" the entire transaction; he donated funds when Defendant securitized the promissory note; and the promissory note is unenforceable because Defendant has not proven that it paid certain taxes.  As a result, dismissal is also recommended because these claims are frivolous sovereign citizen claims and fail to state a claim upon which relief can be granted.

### D.    Claim Seven (FCRA Violation)

Plaintiff's Seventh Claim is based entirely on the sovereign citizen theory that he somehow satisfied the debt or never owed the debt created by his promissory note.  He states that Defendant reported his failure to repay loans to credit bureaus or to third party debt collectors without first validating the debt (Doc. 12 ¶¶ 44); however, he fully acknowledges that he executed the promissory note for the outstanding balance he now owes to Defendant.  His only basis for claiming that Defendant's collection attempts violated the FCRA is a sovereign citizen theory that he never owed or no longer owes the money to Defendant.  Thus, Plaintiff's claims brought pursuant to the FCRA is not factually plausible and does not permit a court to reasonably infer that Defendant's alleged

misconduct was unlawful. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).

### E.    State Law Claims

Plaintiff has alleged the state law claims of constructive fraud and slander. Doc. 12 ¶¶ 21, 44.  Because the undersigned is recommending dismissal of Plaintiff's federal claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims and that they be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV.    CONCLUSION

For the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that this action be dismissed prior to service of process because Plaintiff's federal claims are either frivolous or fail to state a claim upon which relief may be granted, warranting dismissal with prejudice under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), and because the state law claims are due to be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). It is further

ORDERED that the Plaintiff is DIRECTED to file any objections to the said Recommendation on or before **July 2, 2019**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  The Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); s*ee Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 18th day of June, 2019.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

16